JOHN T. GORMAN
Federal Public Defender
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
JOSEPH ANTHONY MESA

**FILED**

DISTRICT COURT OF GUAM

OCT 24 2005ⁿᵖ

**MARY L.M. MORAN**
**CLERK OF COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-00066 |
| | ) | |
| Plaintiff, | ) | MOTION TO SUPPRESS PHYSICAL |
| | ) | EVIDENCE |
| vs. | ) | |
| | ) | |
| JOSEPH ANTHONY MESA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the defendant, JOSEPH ANTHONY MESA, through counsel, John

T. Gorman, Federal Public Defender, and moves this Honorable Court to suppress physical evidence

seized at the Guam Reef Hotel as the search warrant lacked probable cause and/or the service of the

warrant was invalid.

This motion is based upon the Fourth Amendment to the United States Constitution,

the following memorandum of law, declaration of counsel, and upon evidence which may be

adduced at the evidentiary hearing to be held upon this matter.

**MEMORANDUM OF LAW**

**I.       Facts**

On September 8, 2005, at approximately 1:30 p.m., U.S. Drug Enforcement

Administration (DEA) Special Agent Danny Cho, received an anonymous telephone call from an



individual who refused to disclose his/her identity. This anonymous tipster stated that 4 people, Jess Espinosa, Joey Mesa, Shardae Love and Ginger Hamamoto, were staying at an unknown room at the Guam Reef Hotel in Tumon, Guam, and that they were manufacturing methamphetamine. Cho asked the anonymous tipster if he/she were sure about the information. The anonymous tipster stated that he/she knew Love and Love was a drug user.

Cho then contacted Guam Police Department officer, Norbert Sablan. GPD officer Sablan told Cho he recognized Love's name and that Love had been arrested by the Guam police department in August, 2005, for unknown charges. GPD officer Sablan then printed out a booking picture of Love.

At approximately 4:00 p.m. on September 8, 2005, Cho and GPD officers went to the Guam Reef Hotel. Cho showed the photo of Love to the hotel reservations manager and the hotel security manager and asked if she was staying at the hotel. The managers confirmed that Love had been seen along with a couple of young males entering and exiting the hotel. Approximately 5 minutes later, Cho saw Love standing by the front counter with 2 plastic bags filled with heavy objects. Cho then saw Love walk towards and enter the lobby elevator. Cho entered the elevator and requested that Love step outside to answer some questions. Love said yes and stepped outside the elevator. Cho identified himself to Love as a DEA investigator and showed her his badge. Cho told Love he had received information from an anonymous tipster about her manufacturing methamphetamine at the hotel. According to Cho, Love then began acting nervous and started to avoid his questioning by demanding the identity of the anonymous tipster. Cho then told Love he was there to verify that Love was not involved in manufacturing methamphetamine with her male friends. Cho asked Love if she would give permission to law enforcement personnel to check her

2

hotel room to verify there was no operation methamphetamine laboratory. According to Cho, Love then appeared to become angry and said she did not know where her friends were staying.

Cho then asked Love what she was carrying in the plastic bags. Love allegedly stated that she was carrying a can of Coleman gasoline for a kitchen stove for cooking. Cho asked if the room was equipped with a stove. Love again allegedly replied that the gasoline was for the kitchen stove for cooking. Cho then asked Love what was in the other plastic bag. Love allegedly replied that it contained water. After speaking to Love, Cho spoke with the hotel reservations manager and the reservations manager said Room 755 was not equipped with a kitchen unit. The reservations manager also said that even if the hotel rooms are equipped with kitchen stoves, they do not use gasoline for cooking and that customers found with flammable gasoline in their room will be evicted. Cho stated in his affidavit in support of the search warrant that individuals who manufacture methamphetamine frequently use Coleman gasoline and distilled water as part of the process.

According to Cho, Love then changed her story regarding the fuel. Love allegedly also told Cho that the fuel was for a cook-out by the hotel swimming pool with her friends and that she did not know what room her friends were staying in. Cho then asked the hotel security manager if there were barbeque grills located by the swimming pool. The security manager said yes, but advance reservations were needed and the occupants of room 755 did not make a reservation. The security manager also told Cho that the occupants of room 755 had been staying at the hotel for 3 days and changed their room every day. Room 755 was registered under the name of Renee S. Munoz. Cho stated in his affidavit in support of the search warrant that individuals who manufacture methamphetamine frequently change locations to minimize the strong methamphetamine manufacturing odor in the room.

3

At approximately 5:00 p.m., Love was taken by Cho and the GPD officers to GPD headquarters in Tiyan, Guam. Cho then applied for a federal search warrant. Designated District Court Judge S. James Otero, signed the search warrant for room 755 of the Guam Reef. Later that evening, Cho and other federal and GPD officers took Love back to the Guam Reef Hotel. Love was requested to knock on the door of room 755. Approximately 30 seconds later, a female opened the door and the police entered.

Arrested inside room 755 were the defendant, Joseph Anthony Mesa, Ginger Hamamoto and her 6 month old daughter and Jeffrey Espinosa. Approximately 3 grams of alleged methamphetamine were seized from a pocket in the crotch zipper in Mesa's pants. 11 plastic straws allegedly containing methamphetamine were also seized from the floor of the room. Various chemicals, beakers, tubing, a scale, a glass pipe, matchbooks, an electric heating plate and receipts were also seized from the room.

## II.    Argument

### A.    The Search Warrant Was Unsupported By Probable Cause

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . ." U.S. CONST. amend. IV. The Supreme Court has held that a person's Fourth Amendment right to be free from unreasonable searches is implicated where they manifest a subjective expectation of privacy which society accepts as objectively reasonable. See, California v. Greenwood, 486 U.S. 35, 39 (1988). Furthermore, the "police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant requirement." Terry v. Ohio, 392 U.S. 1, 20 (1968). A basic principle of the Fourth Amendment is that there must be probable cause for the search warrant to

4

issue. U.S. CONST. amend. IV. A search warrant shall be issued only on a sworn affidavit before the magistrate judge, and if probable cause shall be found, the judge shall issue a warrant identifying the property to be seized and naming the place to be searched. Fed. R. Crim. P. 41(c)(1). Where an affidavit is the basis for a probable cause determination, that affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, 462 U.S. 213 (1983).

When based on hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information. Gates, 462 U.S. 238. Anonymous tips demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants. United States v. Helton, 314 F. 3d 812 (9th Cir. 2003).

The anonymous tipster's information here was that 4 people, Jess Espinosa, Joey Mesa, Shardae Love and Ginger Hamamoto, were staying at an unknown room at the Guam Reef Hotel in Tumon, Guam, and that they were manufacturing methamphetamine. The anonymous tipster also stated that he/she knew Love and Love was a drug user.

This tip had little in the way of veracity, reliability or basis of knowledge. The tipster was anonymous and nothing is known of his/her background. There is nothing to support the tipster's veracity. Obviously, there is no track record for reliability due to the tipster's anonymity. The tip provides no underlying information as to why the tipster is credible or the information reliable. Finally, there is nothing to show any basis for the tipster's knowledge. The only statement in support of the tip is that Love is a drug user. However the information that Love was a drug user

5

was never verified by the officers. Thus, there are no details to infer that the tipster had a reliable basis for the claim regarding the methamphetamine lab. It is significant to note that the hotel room was registered to a name not mentioned by the tipster.

The officers efforts to corroborate the tip were insufficient to elevate their hunch to probable cause. Love was located at the Reef. She was carrying a can of Coleman gasoline and water. Allegedly, she changed her story as to why she had these items. The hotel management said that the individuals had been staying at the hotel for three nights and had stayed in three different rooms. However none of this information by itself or taken altogether shows a methamphetamine lab in operation and cures the lack of probable cause based on the anonymous tipster. Corroboration of an anonymous tip by static, innocent details is insufficient to establish probable cause. United States v. Mendonsa, 989 F.2d 366 (9th Cir. 1993).

It is true that a magistrate's determination that probable cause exists is entitled to great deference and officers are generally not required to second-guess the magistrate's decision in granting a warrant. United States v. Leon, 468 U.S. 897 (1984). However, deference to such warrants is not boundless. The "good faith" exception is unavailable to the officers here as the supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

**B.** **The Manner In Which the Search Warrant Was Executed Renders the Search Unreasonable.**

The manner in which the search warrant is executed may render the search unreasonable. United States v. Windsor, 846 F.2d 1569, 1579 (9th Cir. 1988) (en banc). Violation of the knock-and-announce requirements of 18 U.S.C. § 3109 requires suppression. United States

6

v. Zermeno, 66 F.3d 1058, 1062-63 (9th Cir. 1995). The Supreme Court has recognized knock-and-announce as a component of the Fourth Amendment. Wilson v. Arkansas, 514 U.S. 927 (1995). The Court in Wilson, recognized that a variety of purposes underlie the knock-and-announce principle and that the "reasonableness" of the officer's entry must be weighed against whether such purposes have been satisfied. As it is clear here that the officers did not knock-and-announce, the burden is on the government to show the search was reasonable and/or complied with 18 U.S.C. § 3109.

The execution of the search warrant is also flawed in that there is no evidence that the occupants of room 755 were ever provided a copy of the search warrant and affidavit. United States v. Gantt, 194 F.3d 987 (9th Cir. 1999). The Gantt court suppressed the evidence reasoning that the whole purpose of Fed. R. Crim. P. 41(d) is to give notice and to show the particularity of the search. There is no "good faith" exception as the police were simply operating outside the rule.

For all of the above reasons, Defendant requests this Court to suppress all physical evidence seized as the search warrant was unsupported by probable cause and/or the execution of the search warrant rendered the search and seizure unconstitutional

DATED: Mongmong, Guam, October 24, 2005

JOHN T. GORMAN
Attorney for Defendant
JOSEPH ANTHONY MESA

7