# ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

**FILED**
DISTRICT COURT OF GUAM

NOV - 7 2005

MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 05-00066 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S OPPOSITION TO** |
| vs. | ) | **DEFENDANTS' MESA'S, ESPINOSA'S** |
| | ) | **AND HAMAMOTO'S MOTIONS** |
| | ) | **TO SUPPRESS** |
| | ) | |
| JOSEPH ANTHONY MESA, | ) | |
| JEFFREY ANTHONY ESPINOSA, and | ) | |
| GINGER PEREZ HAMAMOTO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### A. Defendants Lack Standing to Challenge the Search of Hotel Room 755

To challenge a search under the Fourth Amendment, a defendant must be able to show he

or she has a legitimate expectation of privacy in the area searched. Rakas v. Illinois, 439 U.S.

128, 143 (1978). One who is "aggrieved by an illegal search and seizure only through the

introduction of damaging evidence secured by a search of a third person's premises or property

has not had any of his Fourth Amendment rights infringed." Id. Each movant must show that he

or she has a subjective expectation of privacy that society is prepared to recognize as reasonable.

Smith v. Maryland, 442 U.S. 735, 740 (1979). The burden of proof in suppression cases rests

with the proponent of the motion to suppress, Rakas, 439 U.S. at 131 n.1, and because Fourth

1 Amendment rights are personal, the proponent cannot assert it vicariously through another party.

2 Rakas, 439 U.S. at 133-34; United States v. Padilla, 508 U.S. 77, 81 (1993)(co-conspirators or

3 co-defendants have no special standing).

4 Here, the defendants have not established standing to challenge the search of Guam Reef

5 Hotel Room 755 which was registered to a third party. "Although a guest who stays overnight

6 and keeps personal belongings in the residence of another might have a reasonable expectation of

7 privacy . . . mere presence in the hotel room of another is not enough." United States v.

8 Grandstaff, 813 F.2d 1353, 1357 (9th Cir. 1987). In Grandstaff, the Ninth Circuit held that a

9 guest of the registrant of the room had no standing to challenge a warrantless search of the room.

10 He had not stayed in the room, nor had he left any personal belongings there. Consequently, he

11 had no legitimate expectation of privacy in the room. Grandstaff, 813 F.2d at 1357.

12 See also United States v. Armenta, 69 F.3d 304, 309, n.3 (9th Cir. 1995)(although

13 defendant claimed to be an overnight guest and his wallet, baptismal certificate and social

14 security card application were found at the house, and an affidavit from counsel stating that a

15 third-party would testify that the defendant was a guest was provided, the court found defendant

16 lacked standing to challenge the search of house because there was no identifiable host who

17 could or did give defendant permission to stay at the house).

18 Also, in Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 473 (1998), the Supreme Court

19 held that two individuals, who were in an apartment leased to another person, had no reasonable

20 expectation of privacy where they were "essentially present for a business transaction and were

21 only in the home a matter of hours." 119 S.Ct. at 473. The two defendants were present in the

22 apartment for the sole purpose of packaging cocaine when an officer discovered the illegal

23 activity. Id. at 471. The Supreme Court held that the defendants did not have a reasonable

24 expectation of privacy in the apartment and emphasized the commercial nature of defendants'

25 conduct. The Court explained that an individual's expectation of privacy in commercial

26 premises is " ' less than, a similar expectation in an individual's home,'"and that although the

27

28 2

1  apartment was a dwelling place, for the defendants it was "simply a place to do business." Id. at

2  474.   As in Carter, the defendants in this case were present in the hotel room for a business

3  purpose, i.e., to allegedly manufacture and distribute illegal drugs.

4        A court may refuse a defendant's request for a suppression hearing if the defendant fails

5  to allege facts that, if proved, would constitute standing.  United States v. Ramirez-Garcia, 269

6  F.3d 945, 947 (9th Cir. 2001).

7        B.  The Search Warrant for Room 755 Was Supported by Probable Cause

8        Defendants claim that no probable cause existed to issue a search warrant for Room 755.

9  Probable cause is to be determined by looking at the totality of the circumstances and the

10  collective knowledge of the officers involved.  United States v. Cortez, 449 U.S. 411, 417

11  (1981); United States v. Bertrand, 926 F.2d 838, 844 (9th Cir. 1991); United States v. Ayers, 924

12  F.2d 1468, 1479 (9th Cir. 1991)(courts may rely on conclusions of experienced officers regarding

13  where evidence of a drug crime is likely to be found).

14        In Illinois v. Gates, 462 U.S. 213 (1983), an anonymous informant alleged illegal drug

15  activities, identified suspects, and described a pattern of drug trafficking between two states. The

16  Supreme Court upheld a probable cause finding on the ground that facts alleged by the informant

17  were independently corroborated and considered part of the totality of the circumstances

18  supporting probable cause. Id. at 243-46.  Similarly, in this case, although the tip was from an

19  anonymous caller, the informant's knowledge was specific and detailed the type of drug, the

20  timing and location of the drug activity, and the identification of the participants.  See

21  Exhibits A (Application for Search Warrant) and B (Search Warrant).  Although "an anonymous

22  tip, without more, does not constitute probable cause," an anonymous tip "coupled with

23  independent corroboration of predicted activity," rather than "innocent static details" alone, may

24  establish probable cause.  United States v. Mendonsa, 989 F.2d 366, 368-69 (9th Cir. 1993).

25        As well, DEA agent Danny Cho corroborated not only innocent facts but also predictions

26  of future activity.  Agent Cho explained that, in his experience in narcotics investigations and

27

28                                          3

1  involvement in narcotics-related search warrants, it was common that distilled water and
2  combustible fuel were among the ingredients used for manufacturing methamphetamine. Agent
3  Cho, an experienced narcotics agent, formed the opinion that one of the participants identified by
4  the tipster, Shardae Love, was involved in narcotics activity based upon the conflicting answers
5  she provided the agent about the bottle of distilled water and gallon of fuel she was carrying -
6  which were some of the ingredients used for methamphetamine manufacturing. See Gates, 462
7  at 244 (corroboration of information given in anonymous tip suffices for the "practical, common-
8  sense judgment called for in making a probable cause determination"); Brown v. Texas, 443 U.S.
9  47, 52 n.2 (1979)(a trained experienced police officer is able to perceive and articulate meaning
10 in given conduct which would be wholly innocent to the untrained observer); United States v.
11 Motz, 936 F.2d 1021, 1024 (9th Cir. 1991)(opinions of experienced agents a factor in determining
12 probable cause).

13      Here, the affidavit did not rely solely upon the anonymous tip. Agent Cho engaged in
14 further investigation and collected additional information from Love and hotel personnel
15 sufficient for a finding of probable cause.

16      C. Suppression is Inappropriate Because the Search was Conducted in Good Faith

17      Even if the court should find that the search warrant was not supported by probable cause,
18 the evidence seized pursuant to the warrant should not be suppressed because the officers'
19 reliance on the warrant was objectively reasonable. In United States v. Leon, 468 U.S 897
20 (1984), the Supreme Court held that evidence obtained pursuant to a warrant that violates the
21 Fourth Amendment may nonetheless be admitted "when an officer acting with objective good
22 faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id. at
23 920. In most cases, the mere fact that a warrant has been issued will be enough to establish that a
24 law enforcement officer has acted in good faith in conducting a search. Id. at 922.

25      There are four exclusions to the good faith exception:

26          (1) "when the magistrate * * * was misled by information in an affidavit that
            the affiant knew was false or would have known was false except for his reckless
27

28                                              4

disregard for the truth," (2) "where the issuing magistrate wholly abandoned his [detached and neutral] judicial role," (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and (4) where a warrant is "so facially deficient - - i.e., in failing to particularize the place to be searched or the things to be seized - - that the executing officers cannot reasonably presume it to be valid." Id. at 923.

None of the exceptions apply here. Suppression would not be appropriate in situations in which the warrant, although arguably defective, is based on "evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." Id. at 926.

If officers acting in good faith take the preferred course of obtaining a warrant, as in this case, then the ends of deterrence would not be served by suppression, even if the warrant is subsequently found to be defective. Here, Agent Cho's reliance on the warrant's validity was objectively reasonable, therefore, alternatively, the court should apply the good faith exception.

## D. The Knock and Announce Rule Does Not Apply Because Officers Did Not Break Into the Hotel Room

Defendants claim that the officers failed to comply with the "knock and announce" requirement of 18 U.S.C. § 3109. This rule only applies when a law enforcement officer is required to use force to break into a dwelling to execute a search warrant.

Consensual entry into a dwelling, even if by ruse, for the purpose of executing a search warrant does not constitute a breaking subject to the knock and announce requirement. The Ninth Circuit has upheld the use of a variety of ploys by the police to gain entry prior to executing a warrant. See United States v. Contreras-Ceballos, 999 F.2d 432, 435 (9th Cir. 1993)(officers' "use of a ruse to gain admittance does not implicate section 3109"); United States v. Michaud, 268 F.3d 728, 733 (9th Cir. 2001)(officers' "use of trickery to encourage [the defendant] to open her hotel room door" did not violate Fourth Amendment given the existence of a valid warrant).

Also, contrary to co-defendant Joseph Mesa's assertion, he was given a copy of the search warrant during the evening of the search and the officers lawfully entered Room 755 to execute the warrant.

5

E. Co-defendant Jeffrey Espinosa was Subject to a Search Condition

On about May 20, 2005, the Superior Court of Guam, in People of Guam v. Jeffrey Anthony Espinosa, CF103-05, imposed the following condition after Espinosa entered a deferred plea to the charge of possession of a schedule II controlled substance (as a third degree felony):

> Defendant shall permit Probation Officers or Police Officers to search his person, automobile and residence or room where he is residing, for firearms, alcohol, and illegal controlled substances at any time such a search is requested. Failure to allow such a search will be considered a violation of probation.

See Exhibits C (Indictment); D (Deferred Plea Agreement); and E (Order)

In United States v. Knights, 534 U.S. 112 (2001), the Supreme Court held that "no more than reasonable suspicion" is required to conduct a search of a probationer subject to a consent to search condition. The defendant in Knights was subject to a warrantless search. In this case, however, a valid search warrant was obtained and executed in Room 755 where co-defendants Espinosa, Mesa and Hamamoto were present.

Based on the foregoing, the defendants' motions to suppress should be denied.

RESPECTFULLY submitted this 7th day of November 2005.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: _____
MARIVIC P. DAVID
Assistant U.S. Attorney

6

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

FOR THE **DISTRICT OF** GUAM

**FILED**

DISTRICT COURT OF GUAM

SEP - 8 2005

MARY L.M. MORAN
CLERK OF COURT

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

ROOM 755, GUAM REEF HOTEL LOCATED AT 1317
PALE SAN VITORES ROAD, TUMON, GUAM.
(FURTHER DESCRIBED IN ATTACHMENT A)

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:

I _____ DANNY CHO _____ being duly sworn depose and say:

I am a(n) _____ Special Agent, Drug Enforcement Administration _____ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

Room 755, Guam Reef Hotel located at 1317 Pale San Vitories Road, Tumon, Guam. Property is further described
in Attachment A which is incorporated herein.

in the _____ District of _____ GUAM _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B which is incorporated herein.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
Property that constitutes evidence of the commission of a criminal offense; contraband and fruits of crime, and property,
designed and intended for use as a means of committing a criminal offense.

concerning a violation of Title ___ 21 ___ United States code, Section(s) ___ 841(a) , 846 & 18 USC Section 2 ___.

The facts to support a finding of Probable Cause are as follows:

See attached affidavit which is incorporated herein.

Continued on the attached sheet and made a part hereof.     ☒ Yes     ☐ No

DANNY CHO
_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

09-08-2005                                                    at     Hagatna, Guam
_____                                      _____
Date                                                                  City and State
S. JAMES OTERO
Designated Judge, District Court of Guam                         S. _____
_____                                   _____
Name and Title of Judicial Officer                                Signature of Judicial Officer

GOVERNMENT
EXHIBIT

A

# AFFIDAVIT

I, DANNY CHO, being a Special Agent with the U.S. Drug Enforcement Administration and acting in my official capacity, set forth the following facts:

1.      I have been a Special Agent with the U.S. Drug Enforcement Administration (DEA) since March 1999. I had been assigned from March 1999 to October 2003 to the Southern California Drug Task Force at the DEA Los Angeles Field Division. Since October 2003, I have been assigned to the DEA Guam Resident Office (GRO). The information contained in this affidavit is based on information and written reports of law enforcement officers in the course of their official duties.

2.      From my assignment, I have conducted and/or assisted in more than 10 clandestine lab investigations and prepared search warrants which resulted in the seizures of clandestine labs, including some of the largest yet encountered by law enforcement. I have conducted interviews and surveillances of clandestine lab operators, chemical brokers, narcotic dealers, users and their associates, oftentimes, monitoring their telephone conversations and engaging them in undercover conversation. During my interviews and interrogations of suspects, they taught me techniques used by methamphetamine traffickers to commit their crimes including methods taken to detect and avoid law enforcement.

3.      I have developed official contacts with criminalists, chemical supply companies, chemists, toxic waste disposers, hazardous material's firefighters, environmental health specialists and other narcotics investigators working in the clandestine lab field and have discussed with all of them various aspects of clandestine lab investigations.

4.      This affidavit is made in support of a request for a search warrant for the following premises:  Guam Reef Hotel Room #755 at 1317 Pale San Vitores Road, Tumon, Guam.

5.      On September 8, 2005, I received an anonymous telephone call from an individual ("SOI") who refused to disclosed his/her identity but provided drug-related information regarding the manufacturing of methamphetamine at Guam Reef Hotel, 1317 Pale San Vitores Road, Tumon, Guam. SOI stated that four (4) individuals named "Jess ESPINOSA, Joey MESA, Shardae LOVE and Ginger HAMAMOTO" are currently staying at an unknown room at the

hotel and manufacturing methamphetamine. I then asked SOI how he/she could be sure about the information. SOI replied that he/she knew LOVE and LOVE is a drug user.

6.     Upon receiving the information, I passed the information to Violent Street Crime Unit (VSCU) Task Force Officer (TFO) Nobert Sablan. When TFO Sablan was informed of the name LOVE, he recognized it immediately, and stated that LOVE was recently arrested by Guam Police Department in August 2005 for unknown charges. TFO Sablan then printed out a booking photo of LOVE.

7.     At approximately 4:00 p.m., I went to the hotel and was accompanied with members of VSCU. Upon arrival at the hotel, I showed the photo of LOVE to the hotel room reservations manager and the hotel security manager and asked if she was currently staying at the hotel. The managers confirmed that LOVE was seen along with a couple of young males entering and exiting the hotel. Approximately five (5) minutes later, I recognized LOVE standing by the front counter with two (2) plastic bags filled with heavy objects. I then observed LOVE walk towards and enter the lobby elevator.

8.     Upon entering the elevator, I approached and asked LOVE if she could step outside the elevator to answer some questions. LOVE said yes and stepped outside of the elevator. I identified myself to LOVE, by showing my badge, that I was a DEA investigator and told her that I received anonymous information about her engaging in manufacturing methamphetamine at the hotel. LOVE then became nervous and started to avoid my questions by demanding the identity of the source of the anonymous information. I reiterated that I was at the hotel to verify if LOVE was not involved in manufacturing methamphetamine along with her male friends. I then asked LOVE if she will give enforcement personnel permission to check her hotel room to verify if there is no operating methamphetamine laboratory. By this time, LOVE became angry and said she did not know where her friends were staying.

9.     I asked LOVE what she was carrying in the plastic bags. She replied that she was carrying a can of gasoline (one (1) gallon of Coleman combustible fuel) for a kitchen stove for cooking. I then asked her if the room was equipped with the kitchen stove. She replied again that the gasoline was for the kitchen stove for cooking. I asked LOVE what was inside the other plastic bag. LOVE said water. Subsequent to the interview with LOVE, I spoke with the hotel reservations manager and verified that Room 755 was not equipped with a kitchen unit. The

manager stated that even if the hotel rooms are equipped with kitchen stoves, they do not need combustible fuel for cooking. In addition, if customers are found with any type of inflammable gasoline in the hotel rooms, they are subjected to be removed from the hotel. Based on my training, experience, knowledge of this investigation, and discussions with other law enforcement personnel, I know that individuals who manufacture methamphetamine, frequently use Coleman combustible fuel and distilled water as part of the process of manufacturing methamphetamine.

10.     During the course of the interview, LOVE changed her stories regarding the fuel. LOVE told me that the fuel was for a cook-out today by the hotel swimming pool with her friends, and that she did not know the room her friends were staying at the hotel. I then asked the hotel security manager if there were barbecue grills located by the swimming pool. The hotel security manager said yes, but customers need to make a reservation in advance and the occupants of Room 755 did not make a reservation.

11.     I further gathered information from the hotel security manager that occupants in Room 755 have been staying at the hotel three (3) days and changed their room every day. Room 755 is currently registered under the name of Renee S. Munoz. Based on my training, experience, knowledge of this investigation, and discussions with other law enforcement personnel, I know that individuals who manufacture methamphetamine frequently change places in order to minimize a strong methamphetamine manufacturing chemical odor in the room.

12.     Based on the above mentioned information, I have probable cause to believe that a conspiracy to commit a felony is occurring and has been occurring over the past three (3) days, and a felony crime (the illegal manufacture of methamphetamine) is in progress at the hotel Room 755, 1317 Pale San Vitores Road, Tumon, Guam.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Danny Cho
DEA

## ATTACHMENT A

The premises to be searched are more fully described as follows:

Room 755 of the Guam Reef Hotel, located at 1317 Pale San Vitores Road, Tumon, Guam. The entrance to the hotel faces east towards Tumon strip. On the North and South sides of the building at the top are signs that say "Guam Reef Hotel" in blue lights. Room 755 is on the seventh floor located adjacent to the the building elevator.

# ATTACHMENT B

## ITEMS TO BE SEIZED

The items to be seized are as follows:

      a.      Methamphetamine, Cocaine, heroin, marijuana, and paraphernalia associated with the manufacturing, sale, distribution and/or storage of these or any other narcotics and their derivatives including, scales, containers, measuring devices, weighing devices, tape, cellophane, plastic wrap, wax, grease, plastic wrap, food sealers, electrical tape, cutting agents and narcotics packaging materials, pipes, sifters, alligator clips, baggies, chemicals, gases, solvents and equipment used in the stages of methamphetamine production including, but not limited to ephedrine, psendo ephedrine, ammonia, lithium, sodium, lye, ether, lighter fluid, camping fuel, acetone, vessels, tubing and heating devices

      b.      United States currency in an amount exceeding $1,000;

      c.      Narcotic ledgers, money ledgers, distribution or customer lists, supplier lists, correspondence, notations, logs, receipts, journals, books, storage location information and keys, records and documents noting price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

      d.      Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money containers, financial records, and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of narcotics;

      e.      Telephone paging devices, alphanumeric pagers and beepers and the contents thereof, namely, test activations by law enforcement and memory, portable cellular telephones, digital phones with or without two-way radio communication, mobile telephones, and radios, and the contents thereof, namely, test activities by law enforcement and memory police scanners, radio frequency detectors, telephone recording and answering devices and the contents thereof, namely, recorded telephone messages, answering machines and communication devices which evidence participation in a conspiracy to distribute narcotic drug controlled substances. Officers and agents are may also access any telephone numbers or messages stored within the memory of any cellular, digital or hard-line telephone located during the search, for the purposes of calling or identifying evidence and co-conspirators;

      f.      Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, photographs, communications, and personal notes and items reflecting names, identity, addresses, and telephone numbers regarding illegal activities of associates in drug trafficking activities;

      g.      Financial instruments purchased with large amounts of currency, valued over $1,000 which are derived from the sale of controlled substances, namely, travelers checks,

bonds, stock certificates, cashiers checks, and certificates of deposit, and money counting machines;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sales of narcotic drug controlled substances;

i. Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, namely, airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

j. Illegal or unregistered handguns, shotguns, firearms and weapons; and,

k. Indicia of occupancy that show dominion, control, residency or ownership of the premises, namely, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents.

l. Keys to show ownership for storage facilities, businesses, and other residences;

m. Any and all locked containers including, cabinets, safes, lock boxes, desks and hidden compartments;

n. Items buried in all outdoor areas within the curtilage of the locations to include, front and back yards, concrete and grass areas, or any area where items may be buried.

o. Personal computers, automated data processing systems, or sub systems, or electronic diaries, palm pilots, organizers located therein, whether found in handwritten, typewritten, photocopied or printed form, or stored on computer printouts, magnetic tapes, cassettes, disks, diskettes, optical storage devices, or any other medium, and any personal or laptop computer consisting of a monitor, keyboard, central processing unit, and printer, and all compatible floppy or fixed disk drives, tape or optical drives, necessary to access any of the above records. Officers and agents are directed to access this computerized information that may be stored on any of these items for the purpose of identifying co-conspirators and obtaining additional information and evidence related to this case.

# UNITED STATES DISTRICT COURT

COPY

FOR THE _____ **DISTRICT OF** GUAM

### In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

ROOM 755, GUAM REEF HOTEL LOCATED AT 1317 PALE
SAN VITORES ROAD, TUMON, GUAM.
(FURTHER DESCRIBED IN ATTACHMENT A)

## SEARCH WARRANT

CASE NUMBER:

TO: ___ANY FEDERAL LAW ENFORCEMENT OFFICER___ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____DANNY CHO_____ who has reason to
Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

Room 755, Guam Reef Hotel located at 1317 Pale San Vitores Road, Tumon, Guam. Property is further described in Attachment A.

in the _____ District of _____GUAM_____ there is now

concealed a certain person or property, namely (describe the person or property)

See Attachment B which is incorporated herein.

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property
so described is now concealed on the person or premises above-described and establish grounds for the issuance of this
warrant.

YOU ARE HEREBY COMMANDED to search on or before _____09-19-2005_____
Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and
making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause
has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and
receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly
return this warrant to _____S. JAMES OTERO, Designated District Court Judge, District Court of Guam_____

as required by law. U.S. Judge or Magistrate Judge

___9/8/05   8:45PN___    at    Hagatna, Guam
Date and Time Issued                                   City and State

S. JAMES OTERO
Designated District Court Judge
District Court of Guam                              ___S-D- OT___
Name and Title of Judicial Officer                 Signature of Judicial Officer

GOVERNMENT
EXHIBIT
B

This form was electronically produced by Elite Federal Forms, Inc.

## ATTACHMENT A

The premises to be searched are more fully described as follows:

Room 755 of the Guam Reef Hotel, located at 1317 Pale San Vitores Road, Tumon, Guam. The entrance to the hotel faces east towards Tumon strip. On the North and South sides of the building at the top are signs that say "Guam Reef Hotel" in blue lights. Room 755 is on the seventh floor located adjacent to the the building elevator.

# ATTACHMENT B

## ITEMS TO BE SEIZED

The items to be seized are as follows:

a.      Methamphetamine, Cocaine, heroin, marijuana, and paraphernalia associated with the manufacturing, sale, distribution and/or storage of these or any other narcotics and their derivatives including, scales, containers, measuring devices, weighing devices, tape, cellophane, plastic wrap, wax, grease, plastic wrap, food sealers, electrical tape, cutting agents and narcotics packaging materials, pipes, sifters, alligator clips, baggies, chemicals, gases, solvents and equipment used in the stages of methamphetamine production including, but not limited to ephedrine, psendo ephedrine, ammonia, lithium, sodium, lye, ether, lighter fluid, camping fuel, acetone, vessels, tubing and heating devices

b.      United States currency in an amount exceeding $1,000;

c.      Narcotic ledgers, money ledgers, distribution or customer lists, supplier lists, correspondence, notations, logs, receipts, journals, books, storage location information and keys, records and documents noting price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

d.      Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money containers, financial records, and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of narcotics;

e.      Telephone paging devices, alphanumeric pagers and beepers and the contents thereof, namely, test activations by law enforcement and memory, portable cellular telephones, digital phones with or without two-way radio communication, mobile telephones, and radios, and the contents thereof, namely, test activities by law enforcement and memory police scanners, radio frequency detectors, telephone recording and answering devices and the contents thereof, namely, recorded telephone messages, answering machines and communication devices which evidence participation in a conspiracy to distribute narcotic drug controlled substances. Officers and agents are may also access any telephone numbers or messages stored within the memory of any cellular, digital or hard-line telephone located during the search, for the purposes of calling or identifying evidence and co-conspirators;

f.      Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, photographs, communications, and personal notes and items reflecting names, identity, addresses, and telephone numbers regarding illegal activities of associates in drug trafficking activities;

g.      Financial instruments purchased with large amounts of currency, valued over $1,000 which are derived from the sale of controlled substances, namely, travelers checks,

bonds, stock certificates, cashiers checks, and certificates of deposit, and money counting machines;

  h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sales of narcotic drug controlled substances;

  i. Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, namely, airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

  j. Illegal or unregistered handguns, shotguns, firearms and weapons; and,

  k. Indicia of occupancy that show dominion, control, residency or ownership of the premises, namely, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents.

  l. Keys to show ownership for storage facilities, businesses, and other residences;

  m. Any and all locked containers including, cabinets, safes, lock boxes, desks and hidden compartments;

  n. Items buried in all outdoor areas within the curtilage of the locations to include, front and back yards, concrete and grass areas, or any area where items may be buried.

  o. Personal computers, automated data processing systems, or sub systems, or electronic diaries, palm pilots, organizers located therein, whether found in handwritten, typewritten, photocopied or printed form, or stored on computer printouts, magnetic tapes, cassettes, disks, diskettes, optical storage devices, or any other medium, and any personal or laptop computer consisting of a monitor, keyboard, central processing unit, and printer, and all compatible floppy or fixed disk drives, tape or optical drives, necessary to access any of the above records. Officers and agents are directed to access this computerized information that may be stored on any of these items for the purpose of identifying co-conspirators and obtaining additional information and evidence related to this case.

**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**General Crimes Division**
427 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3406 ● (671) 477-3390 (Fax)
www.guamattorneygeneral.com

**Attorneys for the Government of Guam**

# IN THE SUPERIOR COURT OF GUAM
# HAGÅTÑA, GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | Criminal Case No. CF 103-05 |
| | GPD Report No. 05-07398 |
| vs. | Charges: |
| **JEFFREY ANTHONY ESPINOSA,** 1) | **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE** |
| DOB: 11/25/1970 | (As a 3rd Degree Felony) |
| SSN: 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 | 2) **POSSESSION OF A SCHEDULE I** |
| Defendant. | **CONTROLLED SUBSTANCE** |
| | (As a Violation) |

## INDICTMENT

THE SUPERIOR COURT OF GUAM GRAND JURY HEREBY CHARGES:

## FIRST CHARGE

On or about the 30th day of March, 2005, in Guam, **JEFFREY ANTHONY ESPINOSA**

unlawfully and knowingly possessed a Schedule II controlled substance, that is, an amphetamine-

based substance, in violation of 9 GCA §§ 67.401.2(a) and (b)(1), as amended.

**GOVERNMENT EXHIBIT**
_C_
CARDELL 800-732-4099

Page 1
Indictment - JEFFREY ANTHONY ESPINOSA
Case 1:05-cr-00066 Document 78 Filed 11/07/2005 Page 18 of 30
vm:K:\HOM\VM\SPENO\INDICT\05-F103.wpd

## SECOND CHARGE

On or about the 30th day of March, 2005, in Guam, **JEFFREY ANTHONY ESPINOSA** knowingly possessed less than one ounce of marijuana, a Schedule I controlled substance, in violation of 9 GCA §§ 67.401.2(a) and (b)(3).

Dated this _____ day of, 2005.

**OFFICE OF THE ATTORNEY GENERAL**
DOUGLAS B. MOYLAN, Attorney General of Guam

**A TRUE BILL**

_signature_

**MONTY R. MAY**
Assistant Attorney General, General Crimes Division

_signature_

FOREMAN FOR THE GRAND JURY

RECEIVED
MAY 10 2005

SUPERIOR COURT
OF GUAM
CLERKS OFFICE



Office of the Attorney General
**Douglas B. Moylan**
Attorney General of Guam
**General Crimes Division**
287 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3406 ● (671) 477-3390 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

# IN THE SUPERIOR COURT
# OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM | CRIMINAL CASE NO. **CF103-05** |
| | GPD Report No. 05-07398 |
| vs. | |
| **JEFFREY ANTHONY ESPINOSA,** | **DEFERRED** |
| DOB: 11/25/1970 | **PLEA AGREEMENT** |
| SSN: 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 | |
| Defendant. | |

Pursuant to Criminal Procedure Code § 60.80, the Defendant, **JEFFREY ANTHONY ESPINOSA**, represented by **PUBLIC DEFENDER SERVICE CORPORATION** and the People of Guam, represented by the Office of the Attorney General through Assistant Attorney General **MONTY R. MAY**, enter into the following Plea Agreement:

1. The Defendant, having been advised, understands the following:

   i. The nature of the charge and its elements to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

   ii. The right to consult with and be represented by an attorney at every stage of these proceedings;

   iii. The right to plead not guilty, the right to confront and cross-examine witnesses, and the right against self-incrimination;

   iv. That by pleading guilty to the charge the right to a jury trial is waived; and upon acceptance of the guilty plea by the Court, Defendant stands convicted just as though convicted by a jury;

GOVERNMENT
EXHIBIT
D

ORIGINAL

v.     That if Defendant pleads guilty, the Court may ask questions about the offense charged, and if Defendant answers these questions on the record, and in the presence of his attorney, the answers later may be used against him; and

vi.     That Defendant has a right to prosecution by indictment or preliminary hearing and, if this right is waived, Defendant may be prosecuted by an information filed by the prosecutor.

2.     Defendant voluntarily, and without coercion or promises apart from this Plea Agreement, agrees to enter a *deferred plea* to the charge of **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a Third Degree Felony), a violation of 9 GCA §§ 67.401.2(a) and (b)(1)**. Pursuant to 9 GCA §§ 80.30(c) and 80.50(b), this offense carries a sentence of no more than five (5) years incarceration and a fine of up to five thousand dollars ($5,000).

The charge arises out of the incident described in Guam Police Department Report No. 02-05759.

3.     Defendant understands and agrees he may be called upon to testify under oath about the factual details of these transactions at the taking of this guilty plea.

4.     Defendant understands that he has a right to move for a reduction of his sentence within one hundred twenty (120) days of sentencing pursuant to 8 GCA § 120.46, and agrees to waive that right for the purpose of this plea.

5.     Defendant understands that he has a right to appeal his convictions in this case pursuant to 8 GCA §§ 130.10 and 130.15, and agrees to waive that right for the purpose of this plea.

6.     Defendant understands that such felony conviction could cause him to lose valuable civil rights, such as the right to vote, to sit on a jury, to hold public office, to possess firearms, or to obtain certain types of employment.

7.     Defendant understands and agrees that his right to possess a Firearm Identification Card on Guam shall be revoked.

8.     The Defendant understands and agrees that this agreement shall not be binding on the People should the Defendant be charged with or commit a crime between the time of his agreement

1  and the time for sentencing in this cause; nor shall this agreement be binding on the People until the

2  People confirm all representations made by the Defendant and his attorney;

3      9.    The Attorney General and Defendant agree, in consideration for Defendant's *deferred*

4  *plea* to the following:

5      That as to the charge of **POSSESSION OF A SCHEDULE II CONTROLLED**

6      **SUBSTANCE (As a Third Degree Felony),** the Court's acceptance and entry of the

7      Defendant's guilty plea shall be *deferred* for a period of two (2) years:

8      a.    Defendant shall serve three (3) years at the Department of Corrections, **suspended,**

9            with credit for time served;

10     b.    Defendant shall perform one hundred fifty (150) hours of community service work

11           under the direction of the Alternative Sentencing Office. Defendant shall receive two

12           (2) hours credit towards community service for each hour of counseling he attends;

13           *Counseling hours may not be credited towards fine payments that have been*

14           *converted to community service;*

15     c.    Defendant shall pay a fine in the amount of five thousand dollars ($5,000), plus court

16           costs, to be paid to the Drug Treatment and Enforcement Fund, pursuant to 9 GCA

17           §80.31.1, and shall be paid monthly over the probation period. Defendant shall pay

18           no less than two hundred twenty dollars, ($220.00), per month following Defendant's

19           guilty plea or the first month following Defendant's release from Department of

20           Corrections, whichever is latter. If financially unable to pay this fine, all but five

21           hundred dollars ($500) may be converted to community service at a rate of $5.15 per

22           hour. The remaining five hundred dollars ($500) must be paid in full prior to the end

23           of the two year deferred time period;

24     d.    Defendant shall enroll and attend a drug rehabilitation program under the supervision

25           of the Adult Drug Court, or at the Department of Mental Health and Substance Abuse

26           or any other drug rehabilitation program approved by the Superior Court. Defendant

27           shall receive two (2) hours credit towards community service for each hour of

28           counseling he attends;

Page 3
DEFERRED PLEA AGREEMENT (PCS) - P. vs. JEFFREY ANTHONY ESPINOSA
Superior Court of Guam Criminal Case No. CF103-05

Case 1:05-cr-00068    Document 78    Filed 12/20/2005    Page 22 of 30

e.  Defendant must complete all terms of the following conditions of probation within the time period for which defendant's guilty plea has been deferred. If defendant fails to complete all conditions of probation, the court may enter the defendant's plea of guilty as set out in paragraph 2 and sentence the defendant accordingly up to and including the maximum term of incarceration and probation or parole;

f.  That during defendant's two year probationary period, the following conditions of probation shall be imposed:

i.  Defendant shall enroll and attend a drug rehabilitation program under the supervision of the Adult Drug Court, or at the Department of Mental Health and Substance Abuse or any other drug rehabilitation program approved by the Superior Court. Defendant shall receive two (2) hours credit towards community service for each hour of counseling he attends;

ii.  Defendant shall report to the Probation Office once per week or as recommended by that office, in person, and at that time will take a weekly drug test if requested, and failure to take a weekly drug test, if requested, will be considered a violation of probation. Defendant will report to Probation for his initial intake within two working days of his release from the Department of Corrections or his guilty plea, whichever is the latter;

iii.  Defendant shall perform one hundred fifty (150) hours of community service work under the direction of the Alternative Sentencing Office. Defendant shall perform no fewer than five (5) hours of community service work each month, commencing upon the first month following Defendant's guilty plea or the first month following Defendant's release from Department of Corrections, whichever is the latter. Defendant shall receive two (2) hours credit towards community service for each hour of counseling he attends;

iv.  Defendant stipulates to forfeit any contraband and cash seized to the Guam Police Department for Drug Training, and all other non-contraband personal items will be returned to the Defendant;

v.  Defendant shall not associate with any felons known to him as felons;

vi.  Defendant shall stay away from all firearms and other deadly weapons, and under no circumstances is she to possess, carry, transfer, or use any firearms;

vii.  Defendant shall forfeit her Guam firearm identification card and shall not reapply for another one;

viii.  Defendant is to surrender his Passport, if any, to the Probation Office;

Page 4
DEFERRED PLEA AGREEMENT (PCS) - P. vs. JEFFREY ANTHONY ESPINOSA
Superior Court of Guam Criminal Case No. CF103-05

Case 1:06-cr-00043    Document 78    Filed 12/19/2006    Page 23 of 30    DEFERRED PLEA AGR vs ESPINOSA-MRM.CF103-05

ix.   Defendant shall not leave Guam without the approval of the Court or Probation Office, with prior notice being given to the Office of the Attorney General, General Crimes Division;

x.    Defendant shall not possess or consume any illegal controlled substances;

xi.   Defendant shall not consume any alcoholic beverages;

xii.  Defendant shall not enter any establishments which sell primarily alcoholic beverages;

xiii. Defendant shall submit to random drug and alcohol testing under the supervision of the Probation Office *or* the Adult Drug Court;

xiv.  Defendant shall permit Probation Officers or Police Officers to search his person, automobile and residence or room where he is residing, for firearms, alcohol, and illegal controlled substances at any time such a search is requested. Failure to allow such a search will be considered a violation of probation. Defendant and his attorney stipulate that a presumptive positive field test for drugs, including the Roche Cup or On Tract Test Systems, will be considered evidence of a probation violation;

xv.   Defendant shall make good faith efforts to obtain and maintain legal employment or continue in school;

xvi.  Defendant shall obey all the laws of Guam; and

xvii. Defendant shall abide by any other reasonable conditions imposed by the Court or the Probation Office.

g.    The court will not accept the defendant's guilty plea to the offense herein described so long as the defendant faithfully complies with the conditions herein described. Failure to abide by the above conditions shall be deemed as a violation of the court ordered supervision. If the court finds the defendant in violation of the court's orders as set out in this plea agreement, the court shall enter the defendant's plea of guilty as set out in paragraph 2 of this agreement and sentence the defendant accordingly. If at the end of the defendant's supervisory period of two (2) years, the court finds that the defendant has faithfully complied with the terms and conditions of his supervision, the court shall dismiss the above-entitled case against the defendant.

10.   Defendant understands that if he violates any conditions of his release or of his probation, that the Court may find him in violation and sentence him to serve the maximum sentence in this case.

11. Defendant states he has told his lawyer all the facts and circumstances known about the charges. His lawyer has counseled and advised her on the nature of each charge as well as on any and all lesser included charges.

12. Defendant and the People each intend this Plea Agreement and the sentence imposed be a final sentence and a total and conclusive resolution of the charges described within this Plea Agreement.

13. The parties hereto fully and completely understand and agree that it is in court's duty to impose sentence upon the Defendant, and that any sentence either stipulated to or recommended herein is not binding on the court. If after accepting this plea the court concludes that any of the plea agreement's provisions regarding sentence or the term and conditions of probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sentencing, it must give both the People and the Defendant an opportunity to withdraw from the plea agreement. In case this plea agreement is withdrawn, all original charges will automatically be reinstated.

14. If the Court decides to reject the plea agreement provisions regarding sentencing and neither the People nor the Defendant elects to withdraw the plea agreement, then any sentence either stipulated to or recommended herein in paragraph 9 is not binding upon the court, and the court is bound only by the sentencing limits set forth in paragraph 2 and the applicable statutes.

15. By his signature, Defendant attests he has read this agreement and its provisions have been fully explained by his attorney. Defendant believes his lawyer has done all that anyone could do to counsel and assist her and is satisfied with the advice and help received.

_____
JEFFREY ANTHONY ESPINOSA
Defendant
Dated:_____

_____
MONTY R. MAY
Assistant Attorney General
Dated:_____

_____
PUBLIC DEFENDER SERVICE CORP.
Counsel for Defendant
Dated: 5/5/05

After a hearing held on _May 20_, 2005, and a finding the Defendant's plea of guilty to **POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a Third Degree Felony)** is knowingly and voluntarily made, this Court now accepts the deferred plea agreement herein, acknowledges defendant's plea of guilty, defers acceptance of the guilty plea, and defers judgment for TWO (2) YEARS. Sentencing is set for _____, 2005.

_____
**HONORABLE ALBERTO C. LAMORENA, III**
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

MAY 2005
Dominga M. Nego
Deputy Clerk, Superior Court of Guam




**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**General Crimes Division**
287 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3406 ● (671) 477-3390 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

# IN THE SUPERIOR COURT OF GUAM
# HAGÅTÑA, GUAM

THE PEOPLE OF GUAM,                    )    CRIMINAL CASE NO. CF103-05
                                       )    GPD REPORT NO. 05-07398
            vs.                        )
                                       )
**JEFFREY ANTHONY ESPINOSA,**          )    **ORDER**
DOB:  11/25/1970                       )    **Re: Change of Plea**
SSN:  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                      )    **    on Deferred Plea**
                                       )
                        Defendant.     )
_____)

On **May 20, 2005**, came the attorney for the People, Assistant Attorney General **TIMOTHY**

**M. CONNOR,** and the Defendant appeared with **JANE L. KENNEDY, ESQ.,** counsel, and the

Defendant having moved to change his plea of NOT GUILTY to that of GUILTY of the offense of

**POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a 3ʳᵈ Degree Felony),**

a violation of 9 GCA § 67.401.2(a) and (b)(1).

The Court informed the Defendant of the effect of the plea entered and asked him whether

he insists on his plea or not.

The Defendant persisted in his plea of GUILTY to the offense of **POSSESSION OF A**

**SCHEDULE II CONTROLLED SUBSTANCE (As a 3ʳᵈ Degree Felony).**

The Court then addressed the Defendant personally and found that the plea is made

voluntarily with an understanding of the nature of the charge and consequences of his plea. The

Court further found to its satisfaction that there is a factual basis for the plea.

RECEIVED

JUL 2005

CHIEF PROBATION
SUPERIOR

GOVERNMENT
EXHIBIT
E

Case 1:02-cr-00066    Document 78    Filed 12/12/2005    Page 27 of 30

The Court shall defer acceptance of Defendant's plea of GUILTY for Two (2) years based on the following provisions:

    a.    Defendant shall serve three (3) years imprisonment, at the Department of Corrections, with credit for time served. This period of incarceration shall be suspended, subject to the terms and conditions of probation set forth below;

    b.    Defendant shall perform one hundred fifty (150) hours of community service work under the direction of the Alternative Sentencing Office. Defendant shall receive two (2) hours credit towards community service for each hour of counseling he attends; *Counseling hours may not be credited towards fine payments that have been converted to community service*;

    c.    Defendant shall pay a fine in the amount of five thousand dollars ($5,000.00), plus court costs, to be paid to the Drug Treatment and Enforcement Fund, pursuant to 9 GCA §80.31.1, and shall be paid monthly over the probation period. Defendant shall pay no less than two hundred twenty dollars, ($220.00), per month following Defendant's guilty plea or the first month following Defendant's release from Department of Corrections, whichever is latter. If financially unable to pay this fine, all but five hundred dollars ($500) may be converted to community service at a rate of $5.15 per hour. The remaining five hundred dollars ($500) must be paid in full prior to the end of the two year deferred time period;

    d.    Defendant shall enroll and attend a drug rehabilitation program under the supervision of the Adult Drug Court, or at the Department of Mental Health and Substance Abuse or any other drug rehabilitation program approved by the Superior Court. Defendant shall receive two (2) hours credit towards community service for each hour of counseling he attends;

    e.    Defendant must complete all terms of the following conditions of probation within the time period for which defendant's guilty plea has been deferred. If defendant fails to complete all conditions of probation, the court may enter the defendant's plea of guilty as set out in paragraph 2 and sentence the defendant accordingly up to and including the maximum term of incarceration and probation or parole;

    f.    That during defendant's two year probationary period, the following conditions of probation shall be imposed:

        i.    Defendant shall enroll and attend a drug rehabilitation program under the supervision of the Adult Drug Court, or at the Department of Mental Health and Substance Abuse or any other drug rehabilitation program approved by the Superior Court. Defendant shall receive

Page 2
ORDER Re: Change of Plea on Deferred Plea - P. vs. JEFFREY ANTHONY ESPINOSA
Superior Court of Guam Criminal Case No. CF002-08
Case 1:07-cr-00039    Document 78    Filed 11/06/2009    Page 28 of 30
K:\HOME\LIZA\JUDGMENT\ORDER\PCS\ESPINOSA.TMC

two (2) hours credit towards community service for each hour of counseling he attends;

ii.  Defendant shall report to the Probation Office once per week or as recommended by that office, in person, and at that time will take a weekly drug test if requested, and failure to take a weekly drug test, if requested, will be considered a violation of probation. Defendant will report to Probation for his initial intake within two working days of his release from the Department of Corrections or his guilty plea, whichever is the latter;

iii.  Defendant shall perform one hundred fifty (150) hours of community service work under the direction of the Alternative Sentencing Office. Defendant shall perform no fewer than five (5) hours of community service work each month, commencing upon the first month following Defendant's guilty plea **or** the first month following Defendant's release from Department of Corrections, whichever is the latter. Defendant shall receive two (2) hours credit towards community service for each hour of counseling he attends;

iv.  Defendant stipulates to forfeit any contraband and cash seized to the Guam Police Department for Drug Training, and all other non-contraband personal items will be returned to the Defendant;

v.  Defendant shall not associate with any felons known to him as felons;

vi.  Defendant shall stay away from all firearms and other deadly weapons, and under no circumstances is she to possess, carry, transfer, or use any firearms;

vii.  Defendant shall forfeit her Guam firearm identification card and shall not reapply for another one;

viii.  Defendant is to surrender his Passport, if any, to the Probation Office;

ix.  Defendant shall not leave Guam without the approval of the Court or Probation Office, with prior notice being given to the Office of the Attorney General, General Crimes Division;

x.  Defendant shall not possess or consume any illegal controlled substances;

xi.  Defendant shall not consume any alcoholic beverages;

xii.  Defendant shall not enter any establishments which sell primarily alcoholic beverages;

xiii.  Defendant shall submit to random drug and alcohol testing under the supervision of the Probation Office **or** the Adult Drug Court;

Page 3
ORDER Re: Change of Plea on Deferred Plea - P. vs. JEFFREY ANTHONY ESPINOSA
Superior Court of Guam Criminal Case No. CF0120-04
Case 1:04-cr-00066    Document 78    Filed 11/07/2005    Page 29 of 30
K:\HOME\ZINA\JUDGMENT ORDER\PCS\ESPINOSA.TMC

| | | |
|---|---|---|
| 1 | xiv. | Defendant shall permit Probation Officers or Police Officers to search |
| 2 | | his person, automobile and residence or room where he is residing, |
| 3 | | for firearms, alcohol, and illegal controlled substances at any time |
| 4 | | such a search is requested. Failure to allow such a search will be |
| 5 | | considered a violation of probation. Defendant and his attorney |
| 6 | | stipulate that a presumptive positive field test for drugs, including the |
| 7 | | Roche Cup or On Tract Test Systems, will be considered evidence of |
| | | a probation violation; |

1  xiv.  Defendant shall permit Probation Officers or Police Officers to search his person, automobile and residence or room where he is residing, for firearms, alcohol, and illegal controlled substances at any time such a search is requested. Failure to allow such a search will be considered a violation of probation. Defendant and his attorney stipulate that a presumptive positive field test for drugs, including the Roche Cup or On Tract Test Systems, will be considered evidence of a probation violation;

xv.  Defendant shall make good faith efforts to obtain and maintain legal employment or continue in school;

xvi.  Defendant shall obey all the laws of Guam; and

xvii.  Defendant shall abide by any other reasonable conditions imposed by the Court or the Probation Office.

If the Defendant fully complies with the conditions herein described, *the court will dismiss and expunge the above-entitled case two (2) years from this date, upon receipt from the Defendant assurances that the terms of this agreement have been complied with.* If the Defendant fails to comply with the conditions of this agreement, the court will enter the Defendant's plea of guilty as set forth in this agreement and sentence the Defendant accordingly.

*A hearing for further proceedings will be held on May 27, 2005 at 3:00 P.M.*

JUL 1 2 2005

**SO ORDERED, NUNC PRO TUNC to May 20, 2005**, this _____ day of _____, 2005.

Original Signed By:
Hon. Alberto C. Lamorena, III

**HONORABLE ALBERTO C. LAMORENA, III**
**PRESIDING JUDGE, SUPERIOR COURT OF GUAM.**

Submitted by:

Approved as to form:

**TIMOTHY M. CONNOR**
**Assistant Attorney General**

Dated: 6·28·05

**JANE L. KENNEDY, ESQ.**
**Attorney for Defendant**

Dated: 7/6/05

JUL 13 2005

Floren Rivera
Deputy Clerk, Superior Court of Guam