LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

ORIGINAL

**FILED**
DISTRICT COURT OF GUAM
NOV - 7 2005
MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SHARDAE ROXANNE LOVE,<br><br>　　　　Defendant. | CRIMINAL CASE NO. 05-00066<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT LOVE'S MOTION TO SUPPRESS** |

<u>Defendant Love was Not Subject to Custodial Interrogation Prior to Her Arrest and Officers Had Reasonable Suspicion to Detain Her</u>

Defendant Shardae R. Love claims that she was in custody at the time that she was questioned by DEA Agent Danny Cho while in the Reef Hotel lobby area on September 8, 2005, and was, thus, entitled to a <u>Miranda</u> warning. In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court held that a suspect subject to custodial interrogation must first be given notice of his or her right against self-incrimination. The obligation to administer a <u>Miranda</u> warning to a suspect only arises "where there has been such a restriction on a person's freedom as to render him 'in custody'" <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977).

Agent Cho conducted a lawful investigative stop of Love, analogous to a <u>Terry</u> stop. The Fourth Amendment permits law enforcement agents to detain a suspect for investigation if they have reasonable suspicion that he has committed a crime. <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). During a <u>Terry</u> stop "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 (1984). Also, "[t]he mere fact that an investigation has focused on a suspect does not trigger the need for <u>Miranda</u> warnings in noncustodial settings . . . ." <u>Minnesota v. Murphy</u>, 465 U.S. 420, 431 (1984). The very nature of a <u>Terry</u> stop means that a detainee is not free to leave during the investigation, yet is not entitled to <u>Miranda</u> rights. <u>Berkemer,</u> 468 U.S. at 439-41.

Here, Agent Cho questioned Love near the hotel lobby. The agent identified himself and stated his purpose, i.e., to investigate an anonymous tip about Love and other individuals making methamphetamine in the hotel. The agent asked Love what she was carrying in two plastic bags, and Love stated that a can of gasoline was in one bag and a bottle of water was inside the other bag. Love's conflicting responses to Agent Cho's questions about her reasons for carrying such items in part formed the basis for the agent to seek and obtain a search warrant for Room 755 of the Reef Hotel. <u>See</u> Exhibits A (Application for Search Warrant) and B (Search Warrant). Love provided inconsistent answers to the agent's questions which heightened his suspicions that criminal activity was afoot. Several innocent facts, when evaluated by a trained officer, "might justify the suspicion that criminal activity was afoot." <u>United States v. Sokolow</u>, 490 U.S. 1, 9 (1989). <u>See</u> <u>Alabama v. White</u>, 496 U.S. 325 (1990)(corroboration of anonymous tip's details by subsequent observations provided sufficient indicia of reliability to support reasonable suspicion); <u>United States v. Alvarez</u>, 899 F.2d 833, 837 (9th Cir. 1990)(corroboration of details of anonymous tip combined with observation of subsequent suspicious activity provided reasonable suspicion).

In this case, the place of questioning - near a hotel lobby area - was not hostile or

2

coercive. The questioning took place in a public space with not only other agents nearby but also hotel personnel and guests nearby as well. In the context of detention during traffic stops, the Supreme Court in <u>Berkemer</u> noted that "exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the [detainee's] fear that, if he does not cooperate, he will be subjected to abuse." <u>Id</u>, 468 U.S. at 438.

No unscrupulous and illegitimate activity occurred on the part of law enforcement officers during the investigation in this case. The officers had reasonable suspicion to detain Love on September 8, 2005. The officers did not draw their weapons, and Love had not been handcuffed, searched, and informed that she was under arrest, or otherwise treated as an arrestee. Although Love was taken to an office of the Guam Police Department while Agent Cho was seeking a search warrant after he questioned her at the hotel, no police officer interrogated Love and obtained a statement from her at the police station. She was, thus, not entitled to a <u>Miranda</u> warning. See <u>California v. Beheler</u>, 463 U.S. 1121, 1125-26 (1983) (detainee not "in custody" although questioning took place in a police station).

Love was detained no longer than was reasonably necessary for the agents to diligently seek and obtain a search warrant. Love was brought back to the Reef Hotel after Agent Cho obtained a search warrant that evening and later returned home. Love was arrested pursuant to a warrant on about September 12, 2005.

Based on the foregoing, defendant Love's motion to suppress should be denied.

RESPECTFULLY submitted this 7th day of November 2005.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: _____
MARIVIC P. DAVID
Assistant U.S. Attorney

3

# FILED
DISTRICT COURT OF GUAM
SEP -8 2005
MARY L.M. MORAN
CLERK OF COURT

# United States District Court

FOR THE DISTRICT OF GUAM

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

ROOM 755, GUAM REEF HOTEL LOCATED AT 1317 PALE SAN VITORES ROAD, TUMON, GUAM. (FURTHER DESCRIBED IN ATTACHMENT A)

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER:

I __DANNY CHO__ being duly sworn depose and say:

I am a(n) __Special Agent, Drug Enforcement Administration__ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

Room 755, Guam Reef Hotel located at 1317 Pale San Vitories Road, Tumon, Guam. Property is further described in Attachment A which is incorporated herein.

in the _____ District of __GUAM__

there is now concealed a certain person or property, namely (describe the person or property to be seized)
See Attachment B which is incorporated herein.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
Property that constitutes evidence of the commission of a criminal offense; contraband and fruits of crime, and property, designed and intended for use as a means of committing a criminal offense.

concerning a violation of Title __21__ United States code, Section(s) __841(a), 846 & 18 USC Section 2__.
The facts to support a finding of Probable Cause are as follows:

See attached affidavit which is incorporated herein.

Continued on the attached sheet and made a part hereof.  ☒ Yes  ☐ No

DANNY CHO
Signature of Affiant

EXHIBIT A

Sworn to before me, and subscribed in my presence

09-08-2005  at  Hagatna, Guam
Date                 City and State

S. JAMES OTERO
Designated Judge, District Court of Guam
Name and Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT

I, DANNY CHO, being a Special Agent with the U.S. Drug Enforcement Administration and acting in my official capacity, set forth the following facts:

1. I have been a Special Agent with the U.S. Drug Enforcement Administration (DEA) since March 1999. I had been assigned from March 1999 to October 2003 to the Southern California Drug Task Force at the DEA Los Angeles Field Division. Since October 2003, I have been assigned to the DEA Guam Resident Office (GRO). The information contained in this affidavit is based on information and written reports of law enforcement officers in the course of their official duties.

2. From my assignment, I have conducted and/or assisted in more than 10 clandestine lab investigations and prepared search warrants which resulted in the seizures of clandestine labs, including some of the largest yet encountered by law enforcement. I have conducted interviews and surveillances of clandestine lab operators, chemical brokers, narcotic dealers, users and their associates, oftentimes, monitoring their telephone conversations and engaging them in undercover conversation. During my interviews and interrogations of suspects, they taught me techniques used by methamphetamine traffickers to commit their crimes including methods taken to detect and avoid law enforcement.

3. I have developed official contacts with criminalists, chemical supply companies, chemists, toxic waste disposers, hazardous material's firefighters, environmental health specialists and other narcotics investigators working in the clandestine lab field and have discussed with all of them various aspects of clandestine lab investigations.

4. This affidavit is made in support of a request for a search warrant for the following premises: Guam Reef Hotel Room #755 at 1317 Pale San Vitores Road, Tumon, Guam.

5. On September 8, 2005, I received an anonymous telephone call from an individual ("SOI") who refused to disclosed his/her identity but provided drug-related information regarding the manufacturing of methamphetamine at Guam Reef Hotel, 1317 Pale San Vitores Road, Tumon, Guam. SOI stated that four (4) individuals named "Jess ESPINOSA, Joey MESA, Shardae LOVE and Ginger HAMAMOTO" are currently staying at an unknown room at the

hotel and manufacturing methamphetamine. I then asked SOI how he/she could be sure about the information. SOI replied that he/she knew LOVE and LOVE is a drug user.

6. Upon receiving the information, I passed the information to Violent Street Crime Unit (VSCU) Task Force Officer (TFO) Nobert Sablan. When TFO Sablan was informed of the name LOVE, he recognized it immediately, and stated that LOVE was recently arrested by Guam Police Department in August 2005 for unknown charges. TFO Sablan then printed out a booking photo of LOVE.

7. At approximately 4:00 p.m., I went to the hotel and was accompanied with members of VSCU. Upon arrival at the hotel, I showed the photo of LOVE to the hotel room reservations manager and the hotel security manager and asked if she was currently staying at the hotel. The managers confirmed that LOVE was seen along with a couple of young males entering and exiting the hotel. Approximately five (5) minutes later, I recognized LOVE standing by the front counter with two (2) plastic bags filled with heavy objects. I then observed LOVE walk towards and enter the lobby elevator.

8. Upon entering the elevator, I approached and asked LOVE if she could step outside the elevator to answer some questions. LOVE said yes and stepped outside of the elevator. I identified myself to LOVE, by showing my badge, that I was a DEA investigator and told her that I received anonymous information about her engaging in manufacturing methamphetamine at the hotel. LOVE then became nervous and started to avoid my questions by demanding the identity of the source of the anonymous information. I reiterated that I was at the hotel to verify if LOVE was not involved in manufacturing methamphetamine along with her male friends. I then asked LOVE if she will give enforcement personnel permission to check her hotel room to verify if there is no operating methamphetamine laboratory. By this time, LOVE became angry and said she did not know where her friends were staying.

9. I asked LOVE what she was carrying in the plastic bags. She replied that she was carrying a can of gasoline (one (1) gallon of Coleman combustible fuel) for a kitchen stove for cooking. I then asked her if the room was equipped with the kitchen stove. She replied again that the gasoline was for the kitchen stove for cooking. I asked LOVE what was inside the other plastic bag. LOVE said water. Subsequent to the interview with LOVE, I spoke with the hotel reservations manager and verified that Room 755 was not equipped with a kitchen unit. The

manager stated that even if the hotel rooms are equipped with kitchen stoves, they do not need combustible fuel for cooking. In addition, if customers are found with any type of inflammable gasoline in the hotel rooms, they are subjected to be removed from the hotel. Based on my training, experience, knowledge of this investigation, and discussions with other law enforcement personnel, I know that individuals who manufacture methamphetamine, frequently use Coleman combustible fuel and distilled water as part of the process of manufacturing methamphetamine.

10. During the course of the interview, LOVE changed her stories regarding the fuel. LOVE told me that the fuel was for a cook-out today by the hotel swimming pool with her friends, and that she did not know the room her friends were staying at the hotel. I then asked the hotel security manager if there were barbecue grills located by the swimming pool. The hotel security manager said yes, but customers need to make a reservation in advance and the occupants of Room 755 did not make a reservation.

11. I further gathered information from the hotel security manager that occupants in Room 755 have been staying at the hotel three (3) days and changed their room every day. Room 755 is currently registered under the name of Renee S. Munoz. Based on my training, experience, knowledge of this investigation, and discussions with other law enforcement personnel, I know that individuals who manufacture methamphetamine frequently change places in order to minimize a strong methamphetamine manufacturing chemical odor in the room.

12. Based on the above mentioned information, I have probable cause to believe that a conspiracy to commit a felony is occurring and has been occurring over the past three (3) days, and a felony crime (the illegal manufacture of methamphetamine) is in progress at the hotel Room 755, 1317 Pale San Vitores Road, Tumon, Guam.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Danny Cho
DEA

## ATTACHMENT A

The premises to be searched are more fully described as follows:

Room 755 of the Guam Reef Hotel, located at 1317 Pale San Vitores Road, Tumon, Guam. The entrance to the hotel faces east towards Tumon strip. On the North and South sides of the building at the top are signs that say "Guam Reef Hotel" in blue lights. Room 755 is on the seventh floor located adjacent to the the building elevator.

# ATTACHMENT B

## ITEMS TO BE SEIZED

The items to be seized are as follows:

      a.      Methamphetamine, Cocaine, heroin, marijuana, and paraphernalia associated with the manufacturing, sale, distribution and/or storage of these or any other narcotics and their derivatives including, scales, containers, measuring devices, weighing devices, tape, cellophane, plastic wrap, wax, grease, plastic wrap, food sealers, electrical tape, cutting agents and narcotics packaging materials, pipes, sifters, alligator clips, baggies, chemicals, gases, solvents and equipment used in the stages of methamphetamine production including, but not limited to ephedrine, psendo ephedrine, ammonia, lithium, sodium, lye, ether, lighter fluid, camping fuel, acetone, vessels, tubing and heating devices

      b.      United States currency in an amount exceeding $1,000;

      c.      Narcotic ledgers, money ledgers, distribution or customer lists, supplier lists, correspondence, notations, logs, receipts, journals, books, storage location information and keys, records and documents noting price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

      d.      Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money containers, financial records, and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of narcotics;

      e.      Telephone paging devices, alphanumeric pagers and beepers and the contents thereof, namely, test activations by law enforcement and memory, portable cellular telephones, digital phones with or without two-way radio communication, mobile telephones, and radios, and the contents thereof, namely, test activities by law enforcement and memory police scanners, radio frequency detectors, telephone recording and answering devices and the contents thereof, namely, recorded telephone messages, answering machines and communication devices which evidence participation in a conspiracy to distribute narcotic drug controlled substances. Officers and agents are may also access any telephone numbers or messages stored within the memory of any cellular, digital or hard-line telephone located during the search, for the purposes of calling or identifying evidence and co-conspirators;

      f.      Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, photographs, communications, and personal notes and items reflecting names, identity, addresses, and telephone numbers regarding illegal activities of associates in drug trafficking activities;

      g.      Financial instruments purchased with large amounts of currency, valued over $1,000 which are derived from the sale of controlled substances, namely, travelers checks,

bonds, stock certificates, cashiers checks, and certificates of deposit, and money counting machines;

       h.     Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sales of narcotic drug controlled substances;

       i.     Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, namely, airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

       j.     Illegal or unregistered handguns, shotguns, firearms and weapons; and,

       k.     Indicia of occupancy that show dominion, control, residency or ownership of the premises, namely, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents.

       l.     Keys to show ownership for storage facilities, businesses, and other residences;

       m.     Any and all locked containers including, cabinets, safes, lock boxes, desks and hidden compartments;

       n.     Items buried in all outdoor areas within the curtilage of the locations to include, front and back yards, concrete and grass areas, or any area where items may be buried.

       o.     Personal computers, automated data processing systems, or sub systems, or electronic diaries, palm pilots, organizers located therein, whether found in handwritten, typewritten, photocopied or printed form, or stored on computer printouts, magnetic tapes, cassettes, disks, diskettes, optical storage devices, or any other medium, and any personal or laptop computer consisting of a monitor, keyboard, central processing unit, and printer, and all compatible floppy or fixed disk drives, tape or optical drives, necessary to access any of the above records. Officers and agents are directed to access this computerized information that may be stored on any of these items for the purpose of identifying co-conspirators and obtaining additional information and evidence related to this case.

# UNITED STATES DISTRICT COURT

FOR THE _____ DISTRICT OF GUAM

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

ROOM 755, GUAM REEF HOTEL LOCATED AT 1317 PALE SAN VITORES ROAD, TUMON, GUAM.
(FURTHER DESCRIBED IN ATTACHMENT A)

## SEARCH WARRANT

CASE NUMBER:

TO: ANY FEDERAL LAW ENFORCEMENT OFFICER and any Authorized Officer of the United States

Affidavit(s) having been made before me by **DANNY CHO** (Affiant) who has reason to believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

Room 755, Guam Reef Hotel located at 1317 Pale San Vitores Road, Tumon, Guam. Property is further described in Attachment A.

in the _____ District of GUAM there is now concealed a certain person or property, namely (describe the person or property)

See Attachment B which is incorporated herein.

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before **09-19-2005**
Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to    S. JAMES OTERO, Designated District Court Judge, District Court of Guam
as required by law.   U.S. Judge or Magistrate Judge

9/8/05  8:45pm                    at    Hagatna, Guam
Date and Time Issued                    City and State

S. JAMES OTERO
Designated District Court Judge
District Court of Guam                  S. J— OT
Name and Title of Judicial Officer      Signature of Judicial Officer

EXHIBIT B

## ATTACHMENT A

The premises to be searched are more fully described as follows:

Room 755 of the Guam Reef Hotel, located at 1317 Pale San Vitores Road, Tumon, Guam. The entrance to the hotel faces east towards Tumon strip. On the North and South sides of the building at the top are signs that say "Guam Reef Hotel" in blue lights. Room 755 is on the seventh floor located adjacent to the the building elevator.

# ATTACHMENT B

## ITEMS TO BE SEIZED

The items to be seized are as follows:

    a.    Methamphetamine, Cocaine, heroin, marijuana, and paraphernalia associated with the manufacturing, sale, distribution and/or storage of these or any other narcotics and their derivatives including, scales, containers, measuring devices, weighing devices, tape, cellophane, plastic wrap, wax, grease, plastic wrap, food sealers, electrical tape, cutting agents and narcotics packaging materials, pipes, sifters, alligator clips, baggies, chemicals, gases, solvents and equipment used in the stages of methamphetamine production including, but not limited to ephedrine, psendo ephedrine, ammonia, lithium, sodium, lye, ether, lighter fluid, camping fuel, acetone, vessels, tubing and heating devices

    b.    United States currency in an amount exceeding $1,000;

    c.    Narcotic ledgers, money ledgers, distribution or customer lists, supplier lists, correspondence, notations, logs, receipts, journals, books, storage location information and keys, records and documents noting price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

    d.    Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money containers, financial records, and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of narcotics;

    e.    Telephone paging devices, alphanumeric pagers and beepers and the contents thereof, namely, test activations by law enforcement and memory, portable cellular telephones, digital phones with or without two-way radio communication, mobile telephones, and radios, and the contents thereof, namely, test activities by law enforcement and memory police scanners, radio frequency detectors, telephone recording and answering devices and the contents thereof, namely, recorded telephone messages, answering machines and communication devices which evidence participation in a conspiracy to distribute narcotic drug controlled substances. Officers and agents are may also access any telephone numbers or messages stored within the memory of any cellular, digital or hard-line telephone located during the search, for the purposes of calling or identifying evidence and co-conspirators;

    f.    Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, photographs, communications, and personal notes and items reflecting names, identity, addresses, and telephone numbers regarding illegal activities of associates in drug trafficking activities;

    g.    Financial instruments purchased with large amounts of currency, valued over $1,000 which are derived from the sale of controlled substances, namely, travelers checks,

bonds, stock certificates, cashiers checks, and certificates of deposit, and money counting machines;

   h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sales of narcotic drug controlled substances;

   i. Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, namely, airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

   j. Illegal or unregistered handguns, shotguns, firearms and weapons; and,

   k. Indicia of occupancy that show dominion, control, residency or ownership of the premises, namely, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents.

   l. Keys to show ownership for storage facilities, businesses, and other residences;

   m. Any and all locked containers including, cabinets, safes, lock boxes, desks and hidden compartments;

   n. Items buried in all outdoor areas within the curtilage of the locations to include, front and back yards, concrete and grass areas, or any area where items may be buried.

   o. Personal computers, automated data processing systems, or sub systems, or electronic diaries, palm pilots, organizers located therein, whether found in handwritten, typewritten, photocopied or printed form, or stored on computer printouts, magnetic tapes, cassettes, disks, diskettes, optical storage devices, or any other medium, and any personal or laptop computer consisting of a monitor, keyboard, central processing unit, and printer, and all compatible floppy or fixed disk drives, tape or optical drives, necessary to access any of the above records. Officers and agents are directed to access this computerized information that may be stored on any of these items for the purpose of identifying co-conspirators and obtaining additional information and evidence related to this case.