JOHN T. GORMAN
Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
JOSEPH ANTHONY MESA



FILED
DISTRICT COURT OF GUAM

FEB 2 8 2006 ᵠᵖ

MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) CR 05-00066 |
|---|---|
| Plaintiff, | ) |
| | ) OPPOSITION TO MAGISTRATE |
| | ) JUDGE'S REPORT AND |
| vs. | ) RECOMMENDATION ON |
| | ) DEFENDANT'S MOTION TO SUPPRESS; |
| JOSEPH ANTHONY MESA, | ) CERTIFICATE OF SERVICE |
| | ) |
| Defendant. | ) |
| | ) |

Defendant, JOSEPH ANTHONY MESA, by and through counsel, John T. Gorman, Federal Public Defender, pursuant to Federal Rules of Criminal Procedure 59(a), respectfully objects to the Magistrate Judge's Report and Recommendation on the Mesa's Motion to Suppress Physical Evidence.

I.  **Procedural Background**

On September 21, 2005, Joseph Anthony Mesa and co-defendants, Jeffrey Anthony Espinosa, Ginger Perez Hamamoto and Shardae Roxanne U. Love were indicted in the District Court of Guam on charges of Attempt to Manufacture Methamphetamine Hydrochloride and Possession with Intent to Distribute Methamphetamine Hydrochloride in violation of 21 U.S.C.

**ORIGINAL**

§§ 841(a)(1), (b)(1)© and 846 and 18 U.S.C. § 2. (Docket No. 25). On October 24, 2005, Mesa filed a Motion to Suppress Physical Evidence arguing that the search warrant was unsupported by probable cause and that the manner in which the search warrant was executed rendered the search unreasonable.[1] (Docket No. 61). The government filed its Opposition to the Motion to Suppress on November 7, 2005. (Docket No. 78). Designated District Court Judge Robert Clive Jones referred Mesa's motion and other co-defendants' motions to Magistrate Judge Joaquin V. E. Manibusan, Jr., for determination and recommendation on November 16, 2005. (Docket No. 82). Mesa filed a Reply to the Government's Opposition on November 25, 2005. (Docket No. 93). Magistrate Judge Manibusan held a hearing on the Motion to Suppress on December 5, 2005. (Docket No.101). Magistrate Judge Manibusan heard argument on the threshold issue of whether Mesa and his co-defendants had standing to challenge the search and seizure and took the matter under advisement. (Docket No. 101).[2] On December 20, 2005, Magistrate Judge Manibusan issued his Report and Recommendation finding that the defendants did have standing to contest the search and seizure. (Docket No. 111). Designated District Court Judge Donald W. Molloy adopted Magistrate Judge Manibusan's Findings and Recommendations regarding standing on January 12, 2006. (Docket No. 123). Magistrate Judge Manibusan heard testimony and argument on the motion to suppress on January 25, 2006. (Docket No. 132).

On February 13, 2006, Magistrate Judge Manibusan issued his Report and

---

[1] Co-defendant, Love filed a Motion to Suppress Statements on October 14, 2005. Co-defendants, Espinosa and Hamamoto joined Mesa's Motion to Suppress on October 24, 2005.

[2] On December 6, 2005, Mesa filed a Motion to File a Supplemental Affidavit in Support of Motion to Suppress along with a Supplemental Affidavit. As the Magistrate Judge found in his December 20, 2005 Report and Recommendation that Mesa and the co-defendants did have standing, the Magistrate Judge found that motion to be moot.

2

Recommendation. (Docket No. 136). He found that there was sufficient cause to issue the search warrant. He also found that Cho's use of a ruse to gain entry to room 755 did not violate the "knock and announce" requirement of 18 U.S.C. § 3109.[3] Magistrate Judge Manibusan further found that even though Mesa was not properly served with a copy of the search warrant and affidavit at the onset of the search, this was because the air in the room needed to be "neutralized". He dismissed Mesa's claims that the officers never informed him of the nature and scope of the warrant and held that Federal Rule of Criminal Procedure 41(d) merely requires the officer to show a defendant a copy of the warrant. Magistrate Judge Manibusan further found that even if the warrant was improperly served, this did not warrant suppression as Mesa was not prejudiced and there was no evidence the officers deliberately disregarded the rule.

## II. Factual Background

At the January 25, 2006 hearing on the motion to suppress, the government presented only one witness, U.S. Drug Enforcement Administration (DEA) agent, Danny Cho. Cho testified he had been a DEA agent for over 8 years. On September 8, 2005, at approximately 1:30 p.m., while at his desk at the DEA office, he received a telephone call from an woman who refused to disclose her identity. On cross examination, Cho admitted that in previous testimony under oath, he had testified that he received the telephone call at 3 p.m. This anonymous tipster stated that 4 people, Jess Espinosa, Joey Mesa, Shardae Love and Ginger Hamamoto, were staying at an unknown room at the Guam Reef Hotel in Tumon, Guam, and that they were manufacturing methamphetamine. Cho asked the anonymous tipster if she were sure about the information. The anonymous tipster stated

---

[3] Mesa concedes that under current Ninth Circuit case law, the DEA's use of the ruse to gain entry to the room does not appear to violate the law.

that she knew Love and that Love was a drug user. Cho testified that he never took any notes whatsoever regarding the anonymous tipster's information. He admitted on cross examination that this failure to take and preserve notes was directly contrary to DEA policy.

Cho then contacted Guam Police Department (GPD) Officer Norbert Sablan. Officer Sablan told Cho he recognized Love's name and that Love had been arrested by the GPD in August, 2005 for unknown charges. Officer Sablan then printed out a booking picture of Love. Cho testified he never asked, nor did Officer Sablan tell him, what Love had been arrested for.

At approximately 4:00 p.m. on September 8, 2005, Cho and GPD officers went to the Guam Reef Hotel. Cho showed the photo of Love to the hotel reservations manager and the hotel security manager and asked if she was staying at the hotel. The managers confirmed that Love had been seen, along with a couple of young males, entering and exiting the hotel. Approximately 5 minutes later, Cho saw Love standing by the front counter with 2 plastic bags filled with heavy objects. Cho then saw Love walk towards and enter the lobby elevator. Cho entered the elevator and requested that Love step outside to answer some questions. Love said yes and stepped outside the elevator. Cho identified himself to Love as a DEA investigator and showed her his badge. Cho told Love he had received information from an anonymous tipster about her manufacturing methamphetamine at the hotel. According to Cho, Love then began acting nervous and started to avoid his questioning by demanding the identity of the anonymous tipster. Cho then told Love he was there to verify that Love was not involved in manufacturing methamphetamine with her male friends. Cho asked Love if she would give permission to law enforcement personnel to check her hotel room to verify there was no operating methamphetamine laboratory. According to Cho, Love then appeared to become angry and said she did not know where her friends were staying.

4

Cho then asked Love what she was carrying in the plastic bags. Love allegedly stated that she was carrying a can of Coleman gasoline for a kitchen stove for cooking. Cho asked if the room was equipped with a stove. Love again allegedly replied that the gasoline was for the kitchen stove for cooking. Cho then asked Love what was in the other plastic bag. Love allegedly replied that it contained water. After speaking to Love, Cho spoke with the hotel reservations manager and the reservations manager said room 755 was not equipped with a kitchen unit.

According to Cho, Love then changed her story regarding the fuel. Love allegedly also told Cho that the fuel was for a cook-out by the hotel swimming pool with her friends and that she did not know what room her friends were staying in. Cho then asked the hotel security manager if there were barbeque grills located by the swimming pool. The security manager said yes, but advance reservations were needed and the occupants of room 755 did not make a reservation. The security manager also told Cho that the occupants of room 755 had been staying at the hotel for 3 days and changed their room every day. Cho testified that individuals who manufacture methamphetamine frequently change locations to minimize the strong methamphetamine manufacturing odor in the room.

Cho testified that the detention and interrogation of Love in the hotel lobby took approximately 40 minutes. At approximately 5:00 p.m., Love was taken by Cho and the GPD officers to GPD headquarters in Tiyan, Guam. Cho then applied for a federal search warrant. At approximately 8:45 p.m., Designated District Court Judge S. James Otero, signed the search warrant for room 755 of the Guam Reef Hotel. During cross examination, Cho admitted that in testimony under oath in another proceeding, he had claimed that Judge Otero signed the warrant at 7:45 p.m. Later that evening, Cho and other federal and G.P.D. officers took Love back to the Guam Reef

5

Hotel. The search warrant execution team consisted of approximately 13-14 officers. The service of the warrant began at approximately 8:45 p.m. On cross examination, Cho admitted that in previous sworn testimony in another hearing, he had been wrong when he had insisted that execution of the search warrant began at 7:45. He also admitted that the reports and paperwork he had prepared detailing the search of room 755 was also in error regarding the time of the search warrant execution. Love was requested to knock on the door of room 755. Cho admitted that it was not DEA procedure or policy to use female civilians as a "ruse" during raids on methamphetamine laboratories. Approximately 30 seconds later, Hamamoto opened the door and the police entered.

Arrested inside room 755 were Mesa, Hamamoto and Espinosa. Various chemicals, plastic containers with tubing attached, glassware, 11 plastic straws with a crystal substance believed to be methamphetamine and other items were seized from the room. Cho testified that there was a strong odor which was a common smell of a methamphetamine lab. Cho also testified that there were no operating hot plates and no operating methamphetamine lab inside room 755. Cho testified that when he entered room 755 he told the occupants that they had a search warrant for the room. Cho then took Mesa, Hamamoto and Espinosa into the hotel hallway while he opened balcony door to "neutralize" the air. Cho brought the 3 back into the room 10-15 minutes later. Cho stated that he then showed the search warrant to Mesa. He then took a picture which showed Mesa with the search warrant held under his chin. He testified that Government Exhibit 4 was that picture. Cho testified he and his team left the hotel at approximately 11 p.m.

### III. Argument

#### A. The Search Warrant Was Unsupported By Probable Cause

It is well established that a search warrant shall be issued only on a sworn affidavit

before the magistrate judge, and if probable cause shall be found, the judge shall issue a warrant identifying the property to be seized and naming the place to be searched. Fed. R. CIM. P. 41(c)(1). Where an affidavit is the basis for a probable cause determination, that affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, 462 U.S. 213 (1983).

When based on hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information. Gates, 462 U.S. 238. Anonymous tips demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants. United States v. Hilton, 314 F. 3d 812 (9th Cir. 2003).

The anonymous tipster's information here was that 4 people, Jess Espinosa, Joey Mesa, Shardae Love and Ginger Hamamoto, were staying at an unknown room at the Guam Reef Hotel in Tumon, Guam, and that they were manufacturing methamphetamine. The anonymous tipster also stated that she knew Love and Love was a drug user.

This tip had little in the way of veracity, reliability or basis of knowledge. The tipster was anonymous and nothing is known of her background. There is nothing to support the tipster's veracity. Obviously, there is no track record for reliability due to the tipster's anonymity. The tip provides no underlying information as to why the tipster is credible or the information reliable. Finally, there is nothing to show any basis for the tipster's knowledge. The only statement in support of the tip is that Love is a drug user. However the information that Love was a drug user was never verified by the officers. Thus, there are no details to infer that the tipster had a reliable basis for the

7

claim regarding the methamphetamine lab. It is significant to note that the hotel room was not registered to any of the 4 names mentioned by the tipster.

Cho's efforts to corroborate the tip were insufficient to elevate his hunch to probable cause. Love was located at the Guam Reef Hotel. She was carrying a can of Coleman gasoline and water. She agreed to and did answer the officers' questions. Allegedly, she changed her story as to why she had these items. The hotel management said that Love and two unknown males had been staying at the hotel for three nights and had stayed in three different rooms. However none of this information by itself or taken altogether shows a methamphetamine lab in operation and cures the lack of probable cause based on the anonymous tipster. Corroboration of an anonymous tip by static, innocent details is insufficient to establish probable cause. United States v. Mendonsa, 989 F.2d 366 (9th Cir. 1993).

It is true that a magistrate's determination that probable cause exists is entitled to great deference and officers are generally not required to second-guess the magistrate's decision in granting a warrant. United States v. Leon, 468 U.S. 897 (1984). However, deference to such warrants is not boundless. The "good faith" exception is unavailable to the officers here as the supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

**B.     The Improper Execution of the Search Warrant Renders it Invalid**

DEA agent Cho and his team violated the requirement of the Federal Rules of Criminal Procedure, Rule 41(d) by not giving Mesa a complete copy of the search warrant and affidavit at the outset or even during the course of the search of room 755. The manner in which the search warrant is executed may render the search unreasonable. United States v. Windsor, 846 F.2d

8

1569, 1579 (9th Cir. 1988) (en banc). Federal Rule of Criminal Procedure 41(d) states in pertinent part:

> [t]he officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken.

Both the Supreme Court and the Ninth Circuit have long held that an essential function of a warrant is to assure the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. United States v. Chadwick, 433 U.S. 1 (1977), United States v. Hayes, 794 F.2d 1348 (9th Cir. 1986). Absent exigent circumstances, if a person is present at the search of the their premises, Rule 41(d) requires officers to give the person a complete copy of the warrant at the outset of the search. United States v. Gantt, 194 F.3d 987 994, (9th Cir. 1999).

The evidence here must be suppressed as Mesa was not provided a copy of the search warrant and affidavit. Upon entering room 755 Cho only told the occupants that he had a search warrant for the room. Cho then took Mesa, Hamamoto and Espinosa into the hotel hallway while he opened balcony door to "neutralize" the air. Arguably, Cho's failure to provide the search warrant and affidavit at the onset of the search could be justified by the exigent circumstances of clearing the air in room of the chemical odor.

However even when Cho brought Mesa back into the room 10-15 minutes later, he again failed to provide Mesa with a copy of the search warrant and the affidavit. Cho stated that he then merely "showed" the search warrant to Mesa. He then took a picture which showed Mesa with the search warrant held under his chin. There is no evidence Mesa ever read or was informed of the

9

contents of the search warrant and the affidavit. Magistrate Judge Manibusan held that showing Mesa the warrant and then photographing him with the warrant under his chin amounted to giving him a copy. However, as the Ninth Circuit has held, "[i]t is the government's duty to serve the search warrant on the suspect" in order to **"inform"** the person subject to the search what items the officers executing the warrant can seize." United States v. McGrew, 122 F.3d 847, 850 (9th Cir. 1997). (emphasis added). Merely showing Mesa the face of the warrant and then photographing him with it underneath his chin, without allowing him to read it or having it read to him, is certainly not "informing" him of what items can be seized. Cho's failure to provide Mesa with meaningful or real service of the search warrant and affidavit violated the letter and spirit of Rule 41(d).

Violations of Rule 41(d) require suppression only if there was a deliberate disregard of the rule or the defendant was prejudiced. United States v. Negrete-Gonzales, 966 F.2d 1277, 1283 (9th Cir. 1992). Suppression is justified here as the violation was deliberate. The government has provided no explanation or justification for the agents' failure. There was no manpower shortage as Cho and his team were 13-14 strong and there was only 3 suspects in the room. There was also 13-14 officers to search one hotel room. There were also no time constraints as Cho and his team were at room 755 from 8:45 to 11 p.m., a total of 2 hours and 15 minutes. It is well settled and clearly established case law that proper service of the search warrant is essential. Indeed, one of the seminal Ninth Circuit cases regarding proper execution of a search warrant is a case out of this very district, also involving the DEA. United States v. McGrew, 122 F.3d 847 (9th Cir. 1997). The DEA office on Guam certainly can not claim ignorance of the rule and the law under these circumstances. Their failure to follow the law was deliberate and suppression is necessary. The government also can not seek refuge in the "good faith" exception as Cho and his team were simply operating outside

10

the rule.

## IV. Conclusion

For all of the above reasons, Mesa respectfully requests this Court disregard the Magistrate Judge's Report and Recommendation and suppress all physical evidence seized as the search warrant was unsupported by probable cause and/or the violation of Rule 41(d) during the execution of the search warrant rendered the search and seizure unconstitutional

DATED: Mongmong, Guam, February 28, 2006.

_____
JOHN T. GORMAN
Attorney for Defendant
JOSEPH ANTHONY MESA

11

# CERTIFICATE OF SERVICE

I, RENATE DOEHL, hereby certify that a true and exact copy of the foregoing document was duly mailed and/or hand-delivered to the following on February 28, 2006:

MARIVIC P. DAVID
Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA

PATRICK CIVILLE
Civille & Tang
330 Hernan Cortes Avenue Ste. 200
Hagatna, Guam 96910
Attorney for Ginger Perez Hamamoto

JOAQUIN C. ARRIOLA, JR.
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
C&A Professional Building
Hagatna, Guam 96910
Attorney for Jeffrey Anthony Espinosa

RAWLEN MANTANONA
Cabot & Mantanona
Bank Pacific Building
825 S. Marine Drive
Tamuning, Guam 96913
Attorney for Shardae Roxanne U. Love

DATED: Mongmong, Guam, February 28, 2006.

_____
RENATE DOEHL
Operations Administrator

JOHN T. GORMAN
Attorney for Defendant
JOSEPH ANTHONY MESA